## UNITED STATES DISTRICT COURT
## IN THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISON

JOHN DOE 1 and JOHN DOE 2,
by and through their "next friends"
RICHARD DOE and JANE DOE on behalf
of their minor children; RICHARD DOE
and JANE DOE on behalf of themselves;

|  |  |
|---|---|
| Plaintiffs, | Case No.: 2:25-cv-13562 |
|  | Hon. |

v.

LINCOLN CONSOLIDATED SCHOOLS,
ROBERT JANSEN, in his individual and official capacity;
ADAM BLAYLOCK, in his individual and official capacity;
LINCOLN CONSOLIDATED SCHOOLS BOARD OF EDUCATION;
JENNIFER CZACHORSKI, in her individual and official capacity;
JENNIFER LABOMBARBE, in her individual and official capacity;
THOMAS ROLLINS, in his individual and official capacity;
ALLIE SPARKS, in her individual and official capacity;
MATTHEW BENTLEY, in his individual and official capacity;
JASON MOORE, in his individual and official capacity;

Defendants.

---

Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
DELAPORTE LYNCH, PLLC
Attorney for Plaintiff
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
eric@delaportelynch.com
gina@delaportelynch.com

---

1

## COMPLAINT AND JURY DEMAND

NOW COME Plaintiffs John Doe 1 and John Doe 2,  by and through their "next friends" and parents, Richard Doe and Jane Doe, and Richard Doe and Jane Doe on behalf of themselves (hereinafter, collectively, "Plaintiffs"), by and through their attorneys Delaporte Lynch, PLLC, and file their Complaint for: Violations of the ADA 42 U.S.C. § 12101 *et seq.*; Violations of the Persons with Disabilities Civil Rights Act ("PWDCRA"); Violations of the Elliott-Larsen Civil Rights Act ("ELCRA"); Violations of the Michigan Constitution; Violations of the First and Fourteenth Amendments of the United States Constitution; Claims asserted under 42 U.S.C. § 1983; and Intentional Infliction of Emotional Distress.

## JURISDICTION AND VENUE

1. Plaintiffs John Doe 1 and John Doe 2 are minor children and bring this action through their parents and next friends, Richard Doe and Jane Doe.

2. Richard Doe and Jane Doe additionally appear on behalf of themselves as Plaintiffs.

3. Defendant Lincoln Consolidated Schools (hereinafter, "Defendant LCS," or "LCS") is a Michigan governmental entity situated entirely in Augusta Township, Michigan, in this Honorable Court's territorial jurisdiction.

4. During all material times, Robert Jansen was an individual and the Superintendent of LCS.

5.  During al material times, Adam Blaylock was an individual and the Title IX Coordinator at LCS.

6.  During all material times, Jennifer Czachorksi was an individual and President of the LCS Board of Education.

7.  During all material times, Jennifer Labombarbe was an individual and Vice President of the LCS Board of Education.

8.  During all material times, Thomas Rollins was an individual and Treasurer of the LCS Board of Education.

9.  During all material times, Allie Sparks was an individual and Secretary of the LCS Board of Education.

10. During all material times, Matthew Bentley was an individual and Trustee of LCS Board of Education.

11. During all material times, Jason Moore was an individual and Trustee of LCS Board of Education.

12. This Honorable Court retains subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over claims arising under federal law and the United States Constitution, including claims under 42 U.S.C. § 12101 *et seq*., 42 U.S.C. § 1983, and for violations of the First and Fourteenth Amendments, as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over related state law claims arising under the PWDCRA, ELCRA, the Michigan Constitution,

and Michigan common law.

13. All acts complained of herein occurred within the boundaries of this Honorable Court's territorial jurisdiction.

14. Thus, jurisdiction and venue are proper in this Honorable Court.

## **COMMON FACTS**

### *Background*

15. Plaintiffs incorporate the previous paragraphs as if contained herein.

16. This is a complaint filed to redress egregious wrongdoing inflicted upon 1) Plaintiff John Doe 1, a minor student with disabilities who was subjected to race and disability-based discrimination and harassment, and who suffered due process violations; 2) Plaintiff John Doe 2, a younger brother and minor student who was subjected to relentless bullying, harassment, and an assault, as well as discriminatory treatment due to his familial relationships; 3) Plaintiff Jane Doe, a parent who Defendants retaliated against for reporting violations of law and for exercising her First Amendment rights, and 4) Plaintiff Richard Doe, a parent harmed by Defendants' retaliation in responding (or failing to respond), to parental communications and concerns. Each Plaintiff suffered from the intentional infliction of emotional distress that resulted from Defendants' wrongdoing.

17. John Doe 1 is a 10th-grade student.  He is a polite, bright, and hardworking young person, described by teachers as a "nice and respectful student" who "works well with others."

18. John Doe 1 has been clinically diagnosed with severe Attention Deficit Hyperactivity Disorder (ADHD), Somatic Symptom Disorder, Major Depressive Disorder, and Anxiety.

19. John Doe 1 also suffers from focal seizures triggered by acute and prolonged stress, during which he becomes fearful, combative, nonverbal, confused, and/or disoriented.

20. Throughout middle school and in high school, John Doe 1 had an Individualized Education Plan ("IEP") and/or Section 504 Plan ("504 Plan").

21. On October 12, 2021, an assessment team determined that Doe 1 was eligible for accommodations under Section 504 of the Rehabilitation Act of 1973.  A "Seizure Plan" was developed to address Doe 1's needs during focal seizure events.

22. The plan stipulates, among other accommodations, that Doe 1 must be moved to "a private student-free area in the main office" and that "a staff member will stay with [Doe 2] until the seizure has subsided or a parent arrives."

23. John Doe 2, the younger sibling of John Doe 1, is an 8th-grade student.

24. Like John Doe 1, John Doe 2 faced challenges due to pervasive harassment and discrimination within the District.

25. John Doe 2 currently has an IEP based on autism-spectrum disorder, which was implemented in 2024.

26. Throughout middle school, John Does 1 and 2 were subjected to peer-on-peer race- and disability-based harassment in school.  John Does 1 and 2 and their parents reported incidents of harassment to LCS school officials.

27.  Defendants categorically failed to investigate, intervene, and/or adequately address the recurring harassment.

28. John Does 1 and 2 were forced out of Lincoln Consolidated Schools due to the District's failures to protect John Does 1 and 2 and address the pervasive race- and disability-based harassment.

### *Peer-on-Peer Bullying*

29. Throughout his time at Lincoln Middle School, John Doe 1 experienced pervasive harassment.

30. John Doe 1's classmates called him "retarded" and "stupid," among various other expletives related to his disabilities.

31. The trauma and stress resulting from the bullying not only affected John Doe 1's access to education and ability to manage everyday activities at school, the incidents also negatively impacted his home life.

32. On multiple occasions, John Doe 1 reported that the relentless bullying made him physically ill, sick, nauseous, lightheaded, frustrated, and anxious.

33. John Doe 1 expressed that did not want to go to school anymore.

34. Doe 1's parents repeatedly sought LCS's intervention in the harassment of their son and a revision of his 504 plan so that John Doe 1 would receive the support he needed from trusted adults at LCS.

35. John Doe 1's mother informed the school that the unaddressed bullying was worsening and that John Doe 1's anxiety and other mental health conditions were being negatively impacted.

36. John Doe 1's therapist called LCS several times to warn the District of the increased harassment and need for further supportive measures, but never received a response from the District.

37. John Doe 1 informed his teacher for months that he was being bullied, but nothing was done.

38. In an email communication to LCS administration, Jane Doe reported that John Doe 1 had reached "his breaking point" as a result of the severe and pervasive bullying.

39. The LMS Principal responded to the bullying concern via email.  He reported that an investigation occurred and there was no bullying found.

40. To Plaintiffs' knowledge, no investigation was conducted.

41. John Doe 1 was never interviewed for the LMS Principal's investigation; John Doe 1 and Jane Doe 1 were never informed of the processes or scope of the alleged investigation; and they were never provided updates or documentation that corroborated the existence of such an investigation.

42. John Doe 1's parents informed the school of their belief that their son was being bullied because of his race. Again, Doe 2's parents were told by LCS that the situation would be addressed.

43. The severe and pervasive racial bullying was not addressed.

44. John Doe 1's parents did not receive any follow up.

45. Despite making repeated reports, John Doe 1's peers and classmates continued to target him for race- and disability-based bullying.

46. John Doe 1 was attacked on the bus and called racial slurs, including, but not limited to, "cracker," "slave-owner," and "WASP."

47. The LMS Assistant Principal simply told John Doe 1 and Jane Doe that the incident was handled and that students were punished per LCS guidelines, but the bullying incidents continued unabated.

48. LCS guidelines require complaints of race- and disability-based bullying be promptly forwarded to the Compliance Officer and Title IX Coordinator within two (2) days, who must initiate an investigation, interview relevant witnesses, review any written statements or documentation, and determine

whether disciplinary or remedial action is warranted under the District's anti-discrimination and anti-harassment policy.

49. John Doe 1 saw no evidence that his bullies received any disciplinary action or remedial consequence following the investigation, nor was he informed of any measures taken by the District in response to his reports.

50. The race- and disability-based bullying continued unabated with no apparent District intervention.

51. Doe 2 also experienced severe and pervasive harassment at school.

52. By way of example only, and not all inclusive, the LMS principal would regularly refuse to allow Doe 2 to get lunch when he was not in line "properly;" conduct that punished Doe 2 for behaviors directly manifesting from his autism and depriving him of food because of his disability.

53. In other instances, John Doe 2's peers would hurl ableist and gender-based insults at him.  In one such instance, John Doe 2's fellow students mocked John Doe 2's physical characteristics and targeted him for gender-based harassment by, among other derogations, harassing him based on his height and mocking him for his perceived lack of manly athleticism.

54. The harassment was not limited to verbal attacks.  The same bully physically assaulted John Doe 2 by throwing him into a tree and, on a subsequent bus ride home, attacked John Doe 2's disability status by designating him as

"dumb."  When Doe 2 became upset, the bully told Doe 2 to "shut the fuck up" and called him a derogatory term normally targeted toward someone of the opposite gender ("bitch"), among other vulgarities.

55. Classmates took advantage of John Doe 2's vulnerabilities, by regularly teasing, punching, ***strangling***, and attacking Doe 2 on the playground.

56. Doe 2 reported approximately 40 instances of race-, gender-, and disability-based bullying, harassment, and assault to numerous teachers and adults within the school.

57. In virtually every instance, the District's response was either nonexistent or wholly inadequate, as evinced by the continued, relentless targeting of John Doe 2.

58. The endless bullying was so damaging that John Doe 2 was forced out of LCS and into an out-of-district charter school to escape the deadly environment created by LCS.

### *Doe 1's Breaking Point*

59. On November 7, 2022, John Doe 1 attended tryouts for Lincoln Middle School basketball team.

60. Throughout tryouts, classmates bullied and ridiculed John Doe 1, taunting him because he was "too white" to play basketball.

61. On November 8, 2022, the harassment became so severe that Doe 1 experienced a non-epileptic seizure after being barred from after-school basketball tryouts.

62. On that day, LCS refused to allow Doe 1 to participate in basketball tryouts, purportedly because he lacked a physical, despite having completed one.

63. Doe 1 was forced to go to the office and call home.

64. When LCS staff stopped Doe 1 from returning to tryouts, Doe 1 manifested a symptom of his disability by becoming frustrated, sitting down, and ignoring middle school staff.

65. John Doe 1 ultimately broke his phone before finally complying with directives to report to the office; an expected reaction based upon his disability and his behavioral intervention plan.

66. To manage his anxiety while in the office, Doe 1 wore noise-cancelling headphones—an accommodation provided for him in his 504 plan.

67. Doe 1 then dropped into a near catatonic state (another manifestation of his disability).

68. LMS staff called Doe 1's mom to pick up her son. She explained that she worked far away but would leave immediately to arrive at LMS in about an hour.

69. LMS staff pressured Doe 1's mother to arrive sooner so staff could leave for the day.

70. Doe 1's mother assured staff she would be there as soon as possible, but that there was little she could do about the distance and rush-hour traffic. To not further burden LMS staff, she asked whether any custodial or evening staff could watch her son until she arrived.

71. Rather than seek a non-office staff member to watch Doe 1, office staff asked Jane Doe whether they could touch Doe 1's shoulder to get his attention and talk to him.

72. Jane Doe, understanding her son's disability, explicitly advised against this approach given the negative impact that would result from physical contact while John Doe 1 was in a catatonic state.

73. Despite Jane Doe's warning, an LMS staff member proceeded to grab Doe 1's shoulder.

74. Doe 1 immediately instructed staff not to touch him. Despite explicit instructions from Doe 1 and his mother, staff nonetheless grabbed Doe 1. The inappropriate physical intervention caused a manifestation of Doe 1's disability.

75. In the midst of the episode, Jane Doe, already distressed, heard her son yelling at staff to stop and staff screaming at her son.

76. While LMS staff screamed, overwhelmed, Doe 1's body suddenly went limp and he collapsed down into his chair, apparently suffering a non-epileptic seizure (another manifestation of his disability).

77. The office staff, rather than providing Jane Doe with reassurance or clarity, terminated the phone call, leaving Jane Doe in fear for her son's safety.

78. During this period of dysregulation, before, during, and after the seizure, Doe 1 involuntarily kicked and flailed, but did not strike LMS staff, as they were able to simply move out of the way.

79. Staff then locked Doe 1 out of the office, escalating Doe 1's distress and isolation.

80. In his continued state of dysregulation, Doe 1 "blacked out," after which he threw his headphones on the ground (damaging his headphones), and kicked the radiators outside the office (without damaging the radiators).

81. When Doe 1's mother finally arrived, she found him sitting on the floor in a catatonic state, with no staff in sight.

82. On November 8, 2022, a middle school principal documented the alleged details of the event in PowerSchool, a student information system, and issued a Ten (10) day out-of-school suspension.

83. Defendants initiated the ten-day suspension without first investigating whether LCS disciplined Doe 1 for behavior that was a manifestation of his

disability and without first addressing Jane Doe's many requests for improved accommodations (the interactive process).

84. The emotional and psychological toll from this incident, along with the persistent bullying and failure of the District to support Doe 1, caused Doe 1 to reach his breaking point.

85. On November 9, 2022, one day after failing to accommodate Doe 1's disability, resulting in the incident inside and just outside of the office, Doe 1 was hospitalized for mental health treatment.

86. On November 11, 2022, an LCS counselor provided notice of a Manifestation Determination Review (hereinafter "MDR") to Jane Doe; the proposed dates and times both conflicted with Doe 1's outpatient treatment.

87. On November 14, 2022, Doe 1's psychiatrist sent a letter to LCS staff advising them of Doe 1's inability to participate in the meeting due to his mental state, at the time, though he normally has the intellectual and communicative skills necessary to participate.

88. Through the psychiatrist's letter and other communications, the Does sought a delay in the meeting as an accommodation for their son due to his disability.

89. LCS failed to accommodate Doe 1 or hold an interactive process. Ultimately, LCS ignored the direct correlation between Doe 1's disability and what occurred on November 8, 2022.

90. On November 18, 2022, the District held an MDR without John Doe 1 or his parents in attendance.

91. John Doe 1 was thereby prevented from participating in or challenging the disciplinary determination against him.

92. The MDR team did not consider important information related to Doe 1's behavior including the context that informed the incident.

93.  The ongoing bullying issues and their impact on Doe 1 were not addressed, which excluded important mitigating factors from the MDR team's analysis.

94. The MDR team did not consider how failure to implement the Seizure Plan and BIP impacted and informed Doe 1's behavior.

95. The MDR team did not consider information provided by Doe 1's parents, including information relayed in October 2021 about Doe 1's behavior during seizures.

96. The fact that John Doe 1 becomes fearful, combative, nonverbal, confused, and/or disoriented during seizure events is highly relevant to a consideration of whether Doe 1's conduct was related to his disability and whether LCS had a duty to accommodate.

97. Defendants' negligence exacerbated Doe 1's disability, contributing to his severe distress during the November 8, 2022, incident, including a catatonic state, destruction of his property, and significant psychological trauma.

98. Defendants' failure to accommodate, and the subsequent suspension, excluded John Doe 1 from participation in an educational program and related extra-curricular activities, denying him the benefits of, and subjecting him to, disability discrimination under educational programs and services.

99. Despite clear warnings and medical advice from Doe 1's psychiatrist, Defendants conducted a MDR without proper accommodations or the participation of Doe 1 or his family, further aggravating his emotional distress.

100.    Despite evidence that the November 2022 episode reflected a manifestation of Doe 1's disability, the District failed to accommodate his disability and continued to punish Doe 1.

101.    Only after the Does sought legal representation did the District convene a disciplinary hearing on May 17, 2023 (over six months after punishing Doe 1), to consider Doe 1's expulsion.

102.    Rather than availing themselves of an opportunity to address and correct the District's prior failures and mistreatment of Doe 1, the Board of Education (including all named Board member Defendants), retaliated and discriminated against John Doe 1 by voting to expel John Doe 1 for the remainder of the year, making his return contingent upon completing several punitive tasks over the summer.

103.     Defendants discipline constituted retaliation and discrimination against John Doe 1 for behavior that constituted a manifestation of his disability, ADA retaliation, double jeopardy, and a violation of Doe 1's procedural and substantive due process.

104.     Following these incidents, Jane Doe filed complaints of discrimination against LCS with the U.S. Department of Education Office of Civil Rights ("OCR") in January 2023.

105.     Two days after Plaintiffs submitted a complaint to OCR, Defendant LCS and/or LMS contacted Child Protective Services ("CPS"), who questioned Jane Doe and John Doe 1 about an alleged incident that occurred at school involving John Doe 2.  Plaintiffs were never informed of the incident or the basis of the CPS call.

106.     Defendants' report was in retaliation for the Does' exercise of their protected rights.

107.     Defendants then requested CPS "investigate" vague and fictious allegations involving an incident that occurred at school, not home.

108.     Once again, Defendants' report was in retaliation for the Does' exercise of their protected rights.

109.     CPS thus went to Plaintiffs' home to question the Parents.

110.     Defendants' actions caused Plaintiffs to reasonably believe that Defendants would file further retaliatory actions in order to discourage Plaintiffs from exercising their protected rights.

111.     John Doe 1 and 2 continued to be bullied for their race and disability status.

112.     After facing retaliation herself and receiving little to no meaningful response to her many complaints, Jane Doe finally filed a Formal Complaint of Discrimination with the Board of Education on April 11, 2024, hoping the District would finally listen and take action.

113.     After the initial interview with Jane Doe, months passed without any word or progress.

114.     On September 13, 2024, the District finally issued a self-serving determination letter fraudulently concluding that no discrimination had occurred, another painful reminder that the District had no interest in protecting her children or obeying the law.

115.     Realizing that the District had no intention of changing their ways, and after witnessing the deep emotional toll the ongoing torment took on their sons, Richard and Jane Doe were forced to withdraw their sons from LCS to keep them safe.

WHEREFORE, Plaintiffs state the following Counts against Defendants:

<u>COUNTS I & II</u>

*Violations of the ADA and PWDCRA*
*(42 U.S.C.S. § 12101, et seq. and MCL 37.1101, et seq.)*
*As to all Defendants*

116.    Plaintiffs incorporate the previous paragraphs as if contained herein.

117.    Defendants had actual knowledge of the peer-on-peer harassment experienced by John Doe 1, which was so severe, pervasive and objectively offensive that it deprived John Doe 1 of the full utilization of or benefit from the District; the services provided and rendered by the District; and the terms, conditions, and benefits conferred by the District.

118.    All of the actions taken by all Defendants, or those acting on behalf of, or conspiring with, Defendants, and referred to herein, were done by all Defendants while acting under color of state law.

119.    Defendants discriminated against John Doe 1 on the basis of his disability when they suspended him for conduct that was directly and substantially related to his disability.  At all relevant times, Defendants were aware of John Doe 1's disability and its manifestations.

120.     Despite this knowledge, Defendants acted with discriminatory intent by treating behavior arising from John Doe 1's disability as willful misconduct rather than a manifestation of his disability, and imposing punitive discipline.

121.     The Board of Education (i.e., all individual Board member Defendants), voted to suspend John Doe 1 in a manner that was both discriminatory and retaliatory.  This action had the effect of excluding John Doe 1 from participation in, denying him the benefits of, and subjecting him to discrimination under LCS' educational programs and services.

122.     Defendants failed to accommodate John Doe 1's disability in a manner that would have allowed John Doe 1 to access his education (and enjoy the benefits thereof), and remain in school.

123.     John Doe 1's punishment for conduct that was a manifestation of his disability constitutes unlawful discrimination under state and federal disability rights laws.

124.     As a result of Defendants' retaliation and discrimination, Plaintiffs have been harmed mentally, relationally, emotionally, and physically, thereby suffering both economic and non-economic damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court find that Defendants violated the ADA and the PWDCRA by failing to respond to and adequately investigate John Doe 1's complaints of discrimination and harassment,

and failing discipline and monitor students who harassed John Doe 1; find that Defendants were deliberately indifferent, and that their failures were so severe, pervasive, and objectively offensive as to deprive John Does 1 and 2 of access to educational opportunities and benefits; order Defendants to implement comprehensive training for all staff and administrators on identifying, preventing, and appropriately responding to racial and disability-based peer-to-peer harassment and discrimination; enjoin Defendants, and their agents, servants, employees, and attorneys, and those persons in active concert, possession, or participation with them, from engaging in further acts of discrimination or harassment; award Plaintiffs compensatory, exemplary, and punitive damages in an amount not less than $2,000,000.00 for the physical, emotional, and educational harm suffered as a result of Defendants' actions and inactions; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

## COUNT III

*Violations of Substantive Due Process*
(via 42 U.S.C. § 1983)
*As to All Defendants*

125.    Plaintiffs incorporate the previous paragraphs as if contained herein.

126.    Under 42 U.S.C. § 1983, a person acting on behalf of the government who causes a citizen of the United States to be deprived of any rights,

privileges, or immunities secured by the Constitution shall be liable to that party at law.

127.    The Fourteenth Amendment prohibits the State from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV.

128.    Additionally, Article I § 17 of the Michigan Constitution states, "[n]o person shall be…deprived of life, liberty, or property, without due process of law." Const. 1963, Art I, § 17.

129.    A violation of substantive due process is established by showing an "egregious abuse of governmental power." *Williams v. Smith*, 717 F. Supp. 523, 524 (W.D. Mich. 1989).

130.    The test for substantive due process claims is whether Defendants' conduct "shocks the conscience." *Id*.

131.    Defendants violated John Doe 1 and John Doe 2's due process rights by engaging in the following acts and omissions which shock the conscious:

   a.  Suspending and expelling John Doe 1 for behavior directly related to his disability;

   b.  Suspending and expelling John Doe 1 without proper notice, investigation, or opportunity to be heard;

c.  Conducting an MDR without parental participation and ignoring critical medical and behavioral information.

d.  Disregarding explicit warnings and physically touching John Doe 1, triggering a manifestation of his disability;

e.  Failing to protect John Doe 1 and John Doe 2 from known, ongoing harassment and discrimination; and

f.  Retaliating against the Does by initiating a false CPS report, demonstrating an egregious abuse of governmental power and violations of the Constitution and the Does' civil rights.

132.    As a result of Defendants' violation of John Doe 1 and John Doe 2's substantive due process rights, Plaintiffs have been harmed mentally, relationally, emotionally, and physically, thereby suffering both economic and non-economic damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court find that Defendants violated John Doe 1's due process rights by suspending and expelling John Doe 1 for behavior directly related to his disability; suspending and expelling John Doe 1 without proper notice, investigation, or opportunity to be heard; conducting an MDR without parental participation and ignoring critical medical and behavioral information; disregarding explicit warnings and physically touching John Doe 1, triggering a manifestation of his disability; failing to protect

John Doe 1 and John Doe 2 from known, ongoing harassment and discrimination; and retaliating against the Does by initiating a false CPS report, demonstrating an egregious abuse of governmental power and violations of the Constitution and the Does' civil rights, among other violations.   Plaintiffs further request that this Honorable Count enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession or participation with them from failing to investigate and adequately respond to complaints of peer-to-peer harassment and discrimination; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession, or participation with them from engaging in any further acts of discrimination, harassment, or retaliation against Plaintiff; award Plaintiffs compensatory, exemplary, and punitive damages in an amount not less than $2,000,000.00 for the physical, emotional, and educational harm suffered as a direct result of Defendants' actions and inactions, and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

## COUNT IV

*Violations of Procedural Due Process*
(via 42 U.S.C. § 1983)
*As to All Defendants*

133.  Plaintiffs incorporate the previous paragraphs as if contained herein.

134.  Under 42 U.S.C. § 1983, a person acting on behalf of the government who causes a citizen of the United States to be deprived of any rights, privileges, or immunities secured by the Constitution shall be liable to that party at law.

135.  The Fourteenth Amendment prohibits the State from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV.

136.  Additionally, Article I § 17 of the Michigan Constitution states, "[n]o person shall be…deprived of life, liberty, or property, without due process of law." Const. 1963, Art I, § 17.

137.  The Fourteenth Amendment prohibits the State from depriving any person of life, liberty, or property without due process of law.  U.S. Const. amend. XIV.

138.  Students, including John Doe 1, have a protected property interest in their public education. *See*, *Goss v. Lopez*, 419 U.S. 565 (1975).

139.     Thus, Defendants may not deprive students of their legitimate claims of entitlement to their public education without due process of law.

140.     Defendants deprived John Doe 1 of his property right when they suspended him for 10-days in the aftermath of the November 7, 2022, incident without due process of law.

141.     Defendants did not afford John Doe 1 a meaningful notice or an opportunity to be heard on the charges against him prior to depriving him of his protected property interest.

142.     Defendants further violated John Doe 1's due process rights when failing to respond to his and his Parents reports of disability- and race-based harassment and assault, thereby depriving him of his entitlement to public education.

143.     Defendants further violated John Doe 1's due process rights by expelling him through an expulsion hearing held nearly six months after the November 7, 2022, incident.

144.     Defendants' conduct in disciplining John Doe 1 without affording him lawful and proper procedure prior to depriving him of his public education violated his procedural due process rights.

145.    Defendants deprived John Doe 2 of his property right when they suspended John Doe 1 for 10-days in the aftermath of the November 7, 2022, incident.

146.    As a result of Defendants actions and inactions, Plaintiff suffered emotionally, academically, and physically.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court find that Defendants violated John Doe 1's due process rights by failing to follow established procedure in imposing exclusionary disciplinary measures; conducting the MDR without providing John Doe 1 with an opportunity to be heard regarding the disciplinary decision Defendants deprived John Doe 1 of his property right when they suspended him for 10-days in the aftermath of the November 7, 2022, incident without due process of law; refusing John Doe 1 a meaningful notice or an opportunity to be heard on the charges against him prior to depriving him of his protected property interest; failing to respond to his and his Parents reports of disability- and race-based harassment and assault, thereby depriving him of his entitlement to public education; and expelling him through an expulsion hearing held nearly six months after the November 7, 2022, incident; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession or participation with them from failing to investigate and adequately respond to complaints of peer-to-peer harassment and discrimination; enjoin

Defendants, their agents, servants, employees, and attorneys, and those persons in active concert, possession, or participation with them from engaging in any further acts of discrimination, harassment, or retaliation against Plaintiff; award Plaintiffs compensatory, exemplary, and punitive damages in an amount not less than $2,000,000.00 for the physical, emotional, and educational harm suffered as a direct result of Defendants' actions and inactions, and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

<u>COUNT V</u>

*Violations of the Elliott-Larsen Civil Rights Act*
*Anti-Discrimination and Anti-Retaliation Provisions*
*(MCL 37.2102, et seq.)*
*As to All Defendants*

147.    Plaintiffs incorporate the previous paragraphs as if contained herein.

148.    ELCRA protects an individual's ability obtain the full and equal utilization of educational facilities without discrimination because of race, color, gender identity, familial status, among other protected classifications. MCL 37.2102.

149.    ELCRA makes it unlawful for an educational institution to "[d]iscriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution" because of "race, "gender identity," or familial status. MCL 37.2402(a).

150.    Jane Doe filed complaints of gender-, race-, and/or disability-based discrimination against LCS with the OCR in January 2023, as described in the above Complaint,

151.    Jane Doe filed complaints of gender-, race-, and/or disability-based discrimination against LCS with the District in 2024, as described in the above Complaint.

152.    ELCRA prohibits retaliation against a person who has opposed a violation of the act, made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under the act. *Mitan v. Neiman Marcus*, 240 Mich. App. 679 (2000).

153.    ELCRA's anti-retaliation provision also protects individuals who do not engage in protected activity themselves, but have a close association with a person who does. *Garg v. Macomb County Cmty. Mental Health Servs*., 472 Mich. 463 (2005).

154.    All Defendants discriminated against Plaintiffs when acting with deliberate indifference to severe and pervasive race-, gender-, and/or disability-based discrimination, as described herein.

155.    All Defendants discriminated against Plaintiffs when they failed to address or investigate the bullying against John Does 1 and 2 because of their relation to Jane Doe and in retaliation for her complaint under ELCRA.

156.    All Defendants retaliated against the Does by calling CPS on the family

following Jane Doe's complaint to OCR.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court find

that Defendants discriminated against Plaintiffs by failing to protect John Doe 1 and

John Doe 2 from peer-to-peer harassment; failing to respond to severe and pervasive

race-, gender-, and/or disability-based discrimination; and calling CPS on the Doe

family following Jane Doe's OCR complaint; enjoin Defendants, their agents,

servants, employees, and attorneys, and those persons in active concert, possession

or participation with them from failing to investigate and adequately respond to

complaints of peer-to-peer harassment and discrimination; enjoin Defendants, their

agents, servants, employees, and attorneys, and those persons in active concert,

possession, or participation with them from engaging in any further acts of

discrimination, harassment, or retaliation against Plaintiff; award Plaintiffs

compensatory, exemplary, and punitive damages in an amount not less than

$2,000,000.00 for the physical, emotional, and educational harm suffered as a direct

result of Defendants' actions and inactions, and award Plaintiffs the costs of this

action, including reasonable attorney's fees and costs.

## COUNT VI

*Violations of Retaliation Provisions of the ADA and PWDCRA*
*(2 U.S.C. § 12203, Mich. Comp. Laws § 37.1602)*
*As to all Defendants*

157.     Plaintiffs incorporate the previous paragraphs as if contained herein.

158.     Under the ADA and PWDCRA, it is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of any right granted under Act.  42 U.S.C. § 12203(b); MCL 37.1602(f); MCL 37.1402.

159.     Two days after Plaintiffs submitted a complaint to OCR, Defendant LCS and/or LMS contacted CPS, who went to Plaintiffs' home to question Jane Doe and John Doe 1 about an alleged incident that occurred at school involving John Doe 2.

160.     Plaintiffs were never informed of the incident or the basis of the CPS call.

161.     A report of child abuse can constitute an adverse action if it would dissuade a reasonable person from engaging in protected activity, as child abuse accusations can have powerfully dissuasive consequences, including the potential for a government official to appear at the door with the power to take a child away and conduct an intrusive investigation.

162.     Plaintiffs reasonably believed that Defendants filed the CPS report in order to discourage their OCR reporting activities.

31

163.     As a result of Defendants' retaliation in violation of the ADA and PWDCRA, Plaintiffs have been harmed emotionally, mentally, relationally, and emotionally, thereby suffering both economic and non-economic damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court find that Defendants retaliated against them for exercising their rights under the ADA and PWDCRA by deploying CPS to discourage Plaintiffs from reporting LCS's violations to OCR and by subjecting John Doe 1 to an arbitrary and retaliatory grievance process; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert or participation with them, from failing to investigate and adequately respond to complaints of peer-to-peer harassment and discrimination; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert or participation with them, from engaging in any further acts of discrimination, harassment, or retaliation against Plaintiffs; and award Plaintiffs compensatory, exemplary, and punitive damages in an amount not less than $2,000,000.00 for the physical, emotional, and educational harm suffered as a direct result of Defendants' actions and inactions, together with reasonable attorney's fees and costs.

<u>COUNT VII</u>

*Violation of First Amendment, as applied to the states under the Fourteenth Amendment*
*(via 42 U.S.C. § 1983)*
*As to All Defendants*

164.     Plaintiffs incorporate the previous paragraphs as if contained herein.

165.     Under 42 U.S.C. § 1983, a person acting on behalf of the State who causes a citizen of the United States to be deprived of any rights, privileges, or immunities secured by the Constitution shall be liable to that party at law.

166.     The First Amendment guarantees citizens the right to freedom of speech.  U.S. Const. amend.  I.

167.     Defendants discriminated against the Does for their protected speech activity, including, but not limited to, reporting severe and pervasive race, gender- and disability- based harassment, retaliation, discrimination, and assault to the school district.

168.     Defendants' discrimination took the form of punishing John Doe 1 for manifestations of his disability; responding with deliberate indifference to the Does' reports of severe and pervasive race, gender- and disability- based harassment, retaliation, discrimination and assault; and falsely reporting Plaintiffs to CPS.

169.     Defendants' actions were contrived to have a chilling effect on Plaintiff's free speech, such that a reasonable person would reasonably feel

apprehensive about the consequences of speaking out against the Defendants' actions further.

170.    Defendants' acts were intentional, malicious, willful, wanton, and in reckless disregard of Plaintiff's constitutional rights.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court find that Defendants deliberately violated Plaintiff's First Amendment rights by silencing and retaliating against them for engaging in constitutionally protected speech through intimidation, false reporting, and other improper means; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert or participation with them, from violating Plaintiffs' First Amendment right to free speech; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert or participation with them, from engaging in any further acts of discrimination, harassment, or retaliation against Plaintiffs; award Plaintiffs compensatory, exemplary, and punitive damages in an amount not less than $2,000,000.00 for the physical, emotional, and educational harm suffered as a direct result of Defendants' actions and inactions; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

## COUNT VIII

### *Intentional Infliction of Emotional Distress*
### *(As to all Defendants)*

171.     Plaintiffs incorporate the previous paragraphs as if contained herein.

172.     All Defendants, or those acting on behalf of, or conspiring with Defendants, engaged in retaliatory conduct towards Plaintiffs, including, but not limited to, intentionally refusing to investigate the bullying and harassment of John Doe 1 and John Doe 2, ignoring Jane Doe's communications, and taking punitive actions against the Plaintiffs in retaliation for their advocacy.

173.     Defendants repeatedly dismissed or minimized reports of severe bullying, harassment, and physical assaults suffered by John Doe 1 and John Doe 2, including incidents where John Doe 2 was choked, punched, and taunted, and where John Doe 1 was subjected to sustained mistreatment that exacerbated his seizure disorder.

174.     Defendants acted with deliberate indifference to the ongoing harassment and refused to intervene or provide the necessary protections to John Doe 1 and John Doe 2, despite their knowledge of the incidents and their obligations under the ADA, PWDCRA, ELCRA, and other statutory and constitutional protections.

175.    The Defendants' conduct was extreme, outrageous, and went beyond all bounds of decency, including:

a.  Intentionally ignoring John Doe 2's reports of physical assault and harassment on the school bus and playground, even after clear evidence was presented, such as visible marks on his neck;

b.  Allowing John Doe 1 to be suspended and expelled without proper investigation into whether his conduct was a manifestation of his disability;

c.  Failing to ensure adequate supervision or follow the accommodations prescribed in John Doe 1's Seizure Plan, thereby causing a severe non-epileptic seizure incident on November 7, 2022; and

d.  Making a false CPS report against the family.

176.    The extreme and outrageous conduct by Defendants caused Plaintiffs significant emotional distress, including but not limited to feelings of helplessness, fear, and frustration.  Jane Doe and John Doe 1's quality of life diminished as they witnessed their children's suffering, endured systemic retaliation, and were forced to consider removing their children from school due to Defendants' ongoing failures to act.

177.    As a direct result of Defendants' intentional and egregious conduct, Plaintiffs have suffered severe emotional distress, requiring therapeutic and

psychological intervention, and have endured a diminished quality of life and loss of the enjoyment of daily life.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court find that Defendants intentionally inflicted emotional distress upon Plaintiffs by acting with deliberate indifference to the ongoing harassment of John Doe 1 and John Doe 2; by suspending and expelling John Doe 1 without conducting a proper investigation into whether his conduct was a manifestation of his disability; by failing to ensure adequate supervision or to implement the accommodations prescribed in John Doe 1's Seizure Plan, thereby causing a severe non-epileptic seizure incident on November 7, 2022; and by making a false CPS report against the family. Plaintiffs further request that the Court enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert or participation with them, from failing to investigate and adequately respond to complaints of peer-to-peer harassment and discrimination; enjoin Defendants, their agents, servants, employees, and attorneys, and those persons in active concert or participation with them, from engaging in any further acts of discrimination, harassment, or retaliation against Plaintiffs; award Plaintiffs compensatory, exemplary, and punitive damages in an amount not less than $2,000,000.00 for the physical, emotional, and educational harm suffered as a direct result of Defendants'

actions and inactions; and award Plaintiffs the costs of this action, including reasonable attorney's fees and costs.

RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

a. Find that Defendants discriminated against Plaintiffs in violation of the ADA and PWDCRA.

b. Find that Defendants violated the Elliott-Larsen Civil Rights Act.

c. Find that Defendants violated the First Amendment.

d. Find that Defendants violated Plaintiffs procedural and substantive due process rights.

e. Find that Defendants retaliated against Plaintiffs in violation of the ADA and PWDCRA.

f. Find that Defendants intentionally inflicted emotional distress upon Plaintiffs.

g. Order that Defendants expunge John Doe 1's student disciplinary record following the November 7, 2022, incident.

h. Award Plaintiffs compensatory, exemplary, and punitive damages in an amount not less than $2,000,000.00 for the physical, emotional, and educational harm suffered as a direct result of Defendants' actions and inactions.

i. Award Plaintiffs all appropriate compensation, fines, and penalties against

Defendants as available under law.

j. Award Plaintiffs their reasonable attorney's fees and costs incurred in

pursuing this action.

k. Grant any other relief that this Honorable Court deems just and equitable.

DELAPORTE LYNCH, PLLC

Dated: November 7, 2025

Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
Attorneys for Plaintiffs
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
Eric@DelaporteLynch.com
Gina@DelaporteLynch.com

## UNITED STATES DISTRICT COURT
## IN THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOHN DOE 1 and JOHN DOE 2,
by and through their "next friends"
RICHARD DOE and JANE DOE on behalf
of their minor children; RICHARD DOE
and JANE DOE on behalf of themselves;

                                          Case No.: 2:25-cv-13562

    Plaintiffs,                             Hon.

v.

LINCOLN CONSOLIDATED SCHOOLS,
ROBERT JANSEN, in his individual and official capacity;
ADAM BLAYLOCK, in his individual and official capacity;
LINCOLN CONSOLIDATED SCHOOLS BOARD OF EDUCATION;
JENNIFER CZACHORSKI, in her individual and official capacity;
JENNIFER LABOMBARBE, in her individual and official capacity;
THOMAS ROLLINS, in his individual and official capacity;
ALLIE SPARKS, in her individual and official capacity;
MATTHEW BENTLEY, in his individual and official capacity;
JASON MOORE, in his individual and official capacity;

    Defendants.

_____

Eric D. Delaporte (P69673)
Gina E. Goldfaden (P8683)
DELAPORTE LYNCH, PLLC
Attorney for Plaintiff
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
Eric@DelaporteLynch.com
Gina@DelaporteLynch.com

_____

## **JURY DEMAND**

Pursuant to FRCP 38, Plaintiffs requests that these counts incorporated herein be tried by a jury.

DELAPORTE LYNCH, PLLC

Dated: November 7, 2025

Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
Attorneys for Plaintiffs
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
Eric@DelaporteLynch.com
Gina@DelaporteLynch.com